Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Christopher Garcia (SBN 306082)
**MOON LAW GROUP, PC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
E-mail: kmoon@moonlawgroup.com
E-mail: afeghali@moonlawgroup.com
E-mail: cgarcia@moonlawgroup.com

Attorneys for Plaintiff FLORENTINO LOPEZ

Justin F. Marquez (SBN 262417)
Benjamin H. Haber (SBN 315664)
Daniel J. Kramer (SBN 314625)
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
E-mail: justin@wilshirelawfirm.com
E-mail: benjamin@wilshirelawfirm.com
E-mail: dkramer@wilshirelawfirm.com

Attorneys for Plaintiff LUIS HERNANDEZ

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENTINO LOPEZ, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> UTILITY TREE SERVICE, LLC, a Pennsylvania Limited Liability Company; and DOES 1 through 10, inclusive, <br><br> Defendant. <br> <hr> LUIS HERNANDEZ, individually, and on behalf of all others similarly situated, | Case No. 3:22-cv-01404-JES-DDL <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT** <br><br> Date:        February 14, 2024 <br> Time:        9:00 a.m. <br> Action Filed:        September 15, 2022 <br><br> Hon. James E. Simmons, Jr. <br> Courtroom 4(B), 4th Floor <br> United States Courthouse <br> 221 West Broadway <br> San Diego, California 92101 |

1

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

1                 Plaintiff,

2       vs.

3 UTILITY TREE SERVICE, LLC, a

4 Pennsylvania Limited Liability Company; and DOES 1 through 10, inclusive,

5

6                 Defendant.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

## **NOTICE OF MOTION**

THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 14, 2024, at 9:00 a.m., in Courtroom 4(B) of the United States District Court for the Southern District of California, the Honorable James E. Simmons, Jr., presiding, Plaintiffs Florentino Lopez and Luis Hernandez ("Plaintiffs"), on behalf of themselves, the Class, the California Labor Workforce Development Agency, and all others similarly situated, move the Court for preliminary approval of the Class Action and Private Attorneys General Act ("PAGA") Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Kane Moon).

The Settlement resolves all of the claims in this action on a class basis. In particular, Plaintiffs move for orders:

(1)    Granting preliminary approval of the Settlement;

(2)    Conditionally certifying the Settlement Class for settlement purposes;

(3)    Approving the proposed schedule and procedure for completing the final approval process for the Settlement, including setting the Final Approval Hearing;

(4)    Approving the Class Notice as it pertains to the Class (attached as **Exhibit A** to the Settlement Agreement);

(5)    Preliminarily appointing Moon Law Group, PC and Wilshire Law Firm, PLC as Class Counsel for purposes of this Settlement;

(6)    Preliminarily appointing Florentino Lopez and Luis Hernandez as Class Representatives for purposes of this Settlement;

(7)    Preliminarily appointing and approving Simpluris Class Action Administration ("Simpluris") as the Settlement Administrator for the Class;

(8)    Authorizing the Settlement Administrator to mail and email the

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

approved Class Notice to the Class as set forth in the Settlement Agreement; and

(9)     Preliminarily approving Class Counsel's request for attorney's fees and costs.

Plaintiffs bring this unopposed Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Kane Moon, the Settlement Agreement attached as Exhibit 1 thereto, the Declaration of Florentino Lopez, the Declaration of Luis Hernandez, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of Class and PAGA Action Settlement with their moving papers.

Date: January 10, 2024                    Respectfully submitted,


                                          */s/ Allen Feghali*
                                          Kane Moon
                                          Allen Feghali
                                          Christopher Garcia
                                          Attorneys for Plaintiffs and the Class

4

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    Plaintiffs Florentino Lopez and Luis Hernandez ("Plaintiffs"), on behalf of

4    themselves, and on behalf of the purported Class and aggrieved employees, having

5    reached a class-wide settlement with Defendant Utility Tree Service, LLC

6    ("Defendant" or "Utility Tree") (collectively with Plaintiffs, the "Parties"), seek

7    preliminary approval of the Settlement. After over a year of litigation, in San Diego

8    Superior Court and thereafter in the District Court for the Southern District of

9    California, and following an amendment to the complaint, pre-mediation informal

10    discovery including outreach to class members, and extensive arm's-length

11    negotiations between counsel, the Parties have reached a settlement of the Action,

12    memorialized in the proposed Joint Stipulation of Class Action and PAGA

13    Settlement Agreement and Release (the "Settlement Agreement" or the

14    "Settlement"). *See,* Declaration of Kane Moon ("Moon Decl."), **Exhibit 1** (filed

15    concurrently herewith).

16    Plaintiffs brought this class and Private Attorneys General Act ("PAGA")

17    action on behalf of approximately 876 current and former hourly, non-exempt

18    employees that worked for Utility Tree in California (the "Class Members").

19    Plaintiffs contend that Defendant violated California wage and hour laws, failing to

20    pay minimum wages, failing to pay overtime compensation, failing to authorize and

21    permit and/or make available meal periods, failing to authorize and permit and/or make

22    available rest periods, failing to indemnify necessary business expenses, failing to timely

23    pay wages at termination, failing to provide accurate itemized wage statements,  and

24    violating the California Business and Professions Code. Based on the foregoing, Plaintiffs

25    also brought a claim for Civil Penalties under PAGA.

26    The Settlement resolves the class claims for a total settlement amount of

27    $850,000.00. The Settlement provides excellent average recoveries of

28    approximately $568.40 per Class Member. With this Settlement, the Parties are

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA ACTION SETTLEMENT

resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. Moreover, Class Counsel has conducted a thorough investigation into the facts of this case. Based on the foregoing discovery and their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate. Furthermore, in light of all known facts and circumstances, the risk of significant delay, trial risk, appellate risk, the defenses that could be asserted by Defendant both to certification and on the merits, the Settlement is in the best interests of the Settlement Class Members. Accordingly, Plaintiffs respectfully request that the Court grant the requested approval.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Case Background

Defendant Utility Tree contracts with electrical utilities to trim trees around power lines. Plaintiff Florentino Lopez worked for Defendant as a maintenance employee for approximately 20 years from December 2001 to June 2021. Plaintiff Luis Hernandez worked for Defendant from approximately June 2017 to approximately August 2022. Plaintiffs were classified as non-exempt during the entirety of their employment and were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *See*, Moon Decl., ¶ 5; Declaration of Justin F. Marquez ("Marquez Decl."), ¶ 2.

Plaintiffs allege that Plaintiffs and Class Members experienced wage and hour violations during their employment for Defendant. In particular, Plaintiffs contended that Defendant failed to pay minimum wages, regular rate wages, and overtime compensation for off-the-clock work. Plaintiffs also allege that Defendant failed to provide meal and rest periods, failed to indemnify necessary business expenses, failed to timely pay final wages at termination, failed to provide accurate itemized wage statements, violated the California Business and Professions Code, and is liable for civil penalties under PAGA. *See*, Moon Decl., ¶¶ 6-7; Marquez

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

1    Decl. ¶¶ 2-3.

2    Defendant ardently opposes the merits of this case and denies Plaintiffs'

3    allegations. Defendant maintains that Plaintiffs and the putative class members

4    were paid all wages owed, that it complied with all of its meal and rest period

5    obligations, and that Plaintiffs and the putative class members were provided with

6    the opportunity to take all meal and rest periods to which they were entitled.

7    Further, Defendant asserts it complied with all of its reimbursement obligations,

8    and therefore, Plaintiffs and other Class Members were compensated for any and all

9    necessary business expenses incurred. Moreover, to the extent that Plaintiffs

10    received wage statements that were allegedly inaccurate, Defendant asserted that

11    Plaintiffs suffered no actual damage or harm as a result. *See, e.g., Angeles v. U.S.*

12    *Airways, Inc.* (N.D. Cal. Feb. 19, 2013) No. C 12-05860 CRB, 2013 WL 622032, at

13    *10 ("A plaintiff must adequately plead an injury arising from an employer's

14    failure to provide full and accurate wage statements, and the omission of the

15    required information alone is not sufficient.") *See*, Moon Decl., ¶ 10.

16    With respect to Plaintiffs' claim for waiting time penalties, Defendant

17    alleged that its good-faith belief that it paid all wages precluded the imposition of

18    waiting time penalties since Plaintiffs could not prove that Defendant's alleged

19    failure to pay all final wages at the time of separation was "willful." *See, e.g.,*

20    *Pedroza v. PetSmart, Inc.*, No. ED CV 11–298 GHK (DTBx), 2012 WL 9506073,

21    *5 (C.D. Cal. June 14, 2012). For these reasons, Defendant claimed that it did not

22    engage in any unfair business practices and denied liability under PAGA.

23    Defendant also maintained that Plaintiffs' claims were improper for class treatment.

24    *See*, Moon Decl., ¶10.

25    **B.    Procedural History**

26    Because of Defendant's alleged violations of various provisions of the Labor

27    Code, Plaintiff Florentino Lopez filed a complaint on August 1, 2022, in the

28    Superior Court of California, County of San Diego, Case No. 37-2022-00030456

7

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA ACTION SETTLEMENT

1    and was removed to federal court on September 15, 2022 (the "Lopez Matter" or

2    the "Action"), which, in its amended form and in addition to Mr. Lopez's individual

3    FEHA-related claims, alleges that Defendant: (5) Failed to Pay Minimum Wages

4    [Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197]; (6) Failed to Pay Overtime

5    Compensation [Cal. Lab. Code §§ 1194 and 1198]; (7) Failed to Provide Meal

6    Periods [Cal. Lab. Code §§ 226.7 and 512]; (8) Failed to Authorize and Permit Rest

7    Breaks [Cal. Lab. Code § 226.7]; (9) Failed to Indemnify Necessary Business

8    Expenses [ Cal. Lab. Code § 2802]; (10) Failed to Timely Pay Final Wages at

9    Termination [Cal. Lab. Code §§ 201-203]; (11) Failed to Provide Accurate Itemized

10   Wage Statements [Cal. Lab. Code § 226]; (12) Engaged in Unfair Business

11   Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.]; and (13) Owes Civil Penalties

12   Under PAGA [Cal. Lab. Code §§ 2698, et seq.]. *See*, Moon Decl., ¶ 7.

13   Separately, on October 26, 2022, Plaintiff Luis Hernandez filed a Class

14   Action Complaint in the Superior Court of California, County of Ventura, case

15   number 56-2022-00571736-CU-OE-VTA and it was removed to federal court on

16   December 22, 2022, and is currently pending in the Central District of California,

17   Case No. 2:22-cv-09283-JFW-KS ("Hernandez Matter"). The Hernandez Matter

18   stated class claims which overlapped with the claims set forth in the Lopez Matter.

19   *See*, Moon Decl., ¶ 8; Marquez Decl., ¶¶ 4-6.

20   The Parties in the Hernandez Matter and Lopez Matter engaged in a global

21   mediation, which resulted in a settlement. As part of the settlement, the Parties in

22   both matters agreed to file an amended complaint in the Lopez Matter whereby

23   Hernandez would be added as a plaintiff, and Hernandez's counsel would be added

24   as putative class counsel for purposes of seeking approval in a single venue.

25   Pursuant to this Court's September 29, 2023 order, Plaintiffs' Third Amended Class

26   Action Complaint was deemed filed in this Action for purposes of seeking approval

27   in a single forum and under a single case number. *See*, Moon Decl., ¶ 9; Marquez

28   Decl., ¶ 6.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA ACTION SETTLEMENT

1

### C.    Discovery and Investigation

2     Prior to the completion of formal discovery, the Parties agreed to mediate

3  this matter. The Parties agreed to move forward with informal discovery for which

4  the Parties adhered to a protocol for exchanging documents and information before

5  the mediation. Defendant produced a sample of time and pay records for class

6  members, as well as policy manuals in effect during the statutory period, and

7  additional documents. Defendant also provided information regarding the total

8  number of current and former employees in its informal discovery responses. The

9  data provided by Defendant consisted of tens and thousands of time entries and pay

10  records, which was sufficient for Plaintiffs' counsel and expert to assess the

11  strengths and weaknesses of the claims and to perform a thorough damages

12  analysis. *See*, Moon Decl., ¶ 11; Marquez Decl., ¶ 7.

13     After reviewing the documents regarding Defendant's wage and hour

14  policies and practices, and analyzing Defendant's time and pay records, Class

15  Counsel was able to evaluate the probability of class certification, success on the

16  merits, and Defendant's maximum monetary exposure for all claims. With the aid

17  of a statistics expert retained to analyze the records produced, Class Counsel

18  prepared a damage analysis prior to mediation. Class Counsel also investigated the

19  applicable law regarding the claims and defenses asserted in the litigation. Thus,

20  Plaintiffs and their counsel's familiarity with the facts of the case and the legal

21  issues raised by the pleadings allowed them to act intelligently in negotiating the

22  settlement. *See*, Moon Decl., ¶ 12; Marquez Decl., ¶ 8.

23

### D.    Mediation

24     On April 26, 2023, the Parties participated in private mediation with

25  professional neutral mediator Lisa Klerman, Esq. The settlement negotiations were

26  at arm's length and, although conducted in a professional manner, were adversarial.

27  The parties went into the mediation willing to explore the potential for a settlement

28  of the dispute, but each side was also prepared to litigate their or its position through

9

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA ACTION SETTLEMENT

trial and appeal if a settlement had not been reached. After extensive negotiations and discussions regarding the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, a settlement was reached by the Parties. *See*, Moon Decl., ¶ 13; Marquez Decl., ¶¶ 9-10.

After the agreement to settle, counsel for the Parties met and conferred extensively over the detailed terms of the settlement for purposes of finalizing a long-form settlement agreement and corresponding notice documents. Several drafts and revisions were circulated in order to arrive at the final settlement—the Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement" or "Settlement Agreement"). The Settlement Agreement was fully executed on September 29, 2023. *See*, Moon Decl., ¶ 14, Exhibit 1; Marquez Decl., ¶ 10.

## III.    KEY TERMS OF THE PROPOSED SETTLEMENT

Under the Settlement, Defendant has agreed to pay $850,000.00 to settle all aspects of the Action. This amount is all-inclusive. The Settlement's key terms include the following:

A.    Action: The "Action" means *Florentino Lopez v. Utility Tree Service, LLC*, United States District Court Southern, District of California Case No. 22-cv-1404-RSH-DDL[1] (originally filed on August 1, 2022 in the Superior Court of California, County of San Diego, Case No. 37-2022-00030456 and removed to federal court on September 15, 2022). Settlement Agreement ¶ 1.

B.    Class or Class Members or Settlement Class: All persons who worked for Defendant in California as an hourly-paid, non-exempt employee at any time from the end of the release period in *Torres, et al. v. Utility Tree Service, Inc.*, Santa Clara Superior Court Case No. 115CV286314 ("Torres"), or February 15, 2022, to the date of the Court's order preliminarily approving this Settlement, who do not submit a valid and timely Request for Exclusion. *Id.*, ¶ 5.

---

[1] The current case number is 3:22-cv-01404-JES-DDL.

10

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

C. <u>Class Period</u>: The "Class Period" means the period from February 15, 2022, to the date of the Court's order preliminarily approving the Settlement. *Id.*, ¶ 6.

D. <u>Workweek</u>: The number of weeks of employment in California for each Class Member (excluding vacation and leaves of absence) as a non-exempt employee during the Class Period. Defendant will calculate the number of Workweeks by calculating the number of weeks in which each Class Member earned non-vacation wages from Defendant in California during the Class Period. Any Class Member with less than one week of employment will be credited with one Workweek. *Id.*, ¶ 31.

E. <u>PAGA Period</u>: The applicable PAGA limitations period is February 15, 2020, to the date of the Court's order preliminarily approving the Settlement. *Id.*, ¶ 38(a)(ii).

F. <u>Class Counsel</u>: "Class Counsel" means Moon Law Group, PC and Wilshire Law Firm, PLC. *Id.*, ¶ 2.

G. <u>Gross Settlement Amount</u>: The Gross Settlement Amount is $850,000.00 and excludes Defendant's employer's taxes and contributions. This amount includes the Net Settlement Amount, the Class Representative Enhancement Payments to Plaintiffs, LWDA portion of the PAGA Settlement Amount, Settlement Administration Costs to the Settlement Administrator, and Class Counsel's Award. *Id.*, ¶ 13.

H. <u>Adjustment of Gross Settlement Amount</u>: If, as of the date of Preliminary Approval, the total number of putative Class Members exceeds the original estimates of 876 by more than fifteen percent (15%), then Defendant, at its sole discretion, may adjust the date of the release period. *Id.*, ¶ 41.

I. <u>Net Settlement Amount</u>: The Net Settlement Amount is the portion of the Gross Settlement Amount remaining after deduction of the approved

11

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

1  Class Representative Enhancement Payments, Settlement Administration

2  Costs, the Labor and Workforce Development Agency's ("LWDA") portion

3  of the PAGA Settlement Amount, and Class Counsel Award. The entire Net

4  Settlement Amount will be distributed to Class Members. *Id.*, ¶ 15.

5  J.     The PAGA Settlement Amount: The Parties agreed that $25,000.00

6  from the Gross Settlement Amount will be allocated toward penalties under

7  PAGA. *Id.*, ¶ 18. Seventy-five percent (75%) of the PAGA Settlement

8  Amount, or $18,750.00, will be paid to the LWDA, and twenty-five percent

9  (25%), or $6,250.00, will be distributed to Class Members on a *pro rata* basis

10  based on Workweeks during the application PAGA Period. *Id.*, ¶ 38(a)(i)(ii).

11  K.     Class Counsel's Award: "Class Counsel's Award" means attorneys'

12  fees agreed upon by the Parties and approved by the Court for Class

13  Counsel's litigation and resolution of the Action, and all reasonable costs and

14  expenses incurred and to be incurred by Class Counsel in this Action. Under

15  the Settlement, Defendant will not oppose Class Counsel's request for fees of

16  up to 33 1/3% ($283,333.33) of the Gross Settlement Amount, and

17  costs/expenses not to exceed $25,000.00 (together "Class Counsel Award" or

18  "Attorneys' Fees and Costs") subject to the Court finally approving this

19  Settlement and subject to the exhaustion of any and all appeals. Any portion

20  of the Class Counsel Award not awarded to Class Counsel shall be added to

21  the Net Settlement Amount. *Id.*, ¶ 3.

22  L.     Class Representative Enhancement Payments: Subject to Court's

23  approval, each named Plaintiff will be paid a Class Representative

24  Enhancement Payment of $5,000.00 ($5,000.00 to Lopez and $5,000.00 to

25  Hernandez) in recognition of their effort and work in prosecuting the Action

26  on behalf of Class Members, subject to the Court granting final approval of

27  this Agreement and subject to the exhaustion of any and all appeals. Any

28  portion of the Class Representative Enhancements not awarded to Plaintiffs

will be added to the Net Settlement Amount. *Id.*, ¶ 7.

M.    Settlement Administrator: "Settlement Administrator" means Simpluris Class Action Settlement Administration, or any other third-party class action settlement administrator agreed to by the Parties and approved by the Court. *Id.*, ¶ 28. Settlement Administration costs are estimated not to exceed $15,000.00. *Id.*, ¶ 29.

N.    Individual Settlement Payment: "Individual Settlement Payment" means each Class Member's share of the Net Settlement Amount, to be distributed to the Settlement Class. *Id.*, ¶ 14. Individual Settlement Payment is calculated by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all putative Class Members and (b) multiplying the result by each putative Class Member's total number of Workweeks. *Id.*, ¶ 42.

O.    Allocation of Individual Settlement Payment: All Individual Settlement Payments will be allocated as follows: one-third (33 1/3%) as wages, one-third (33 1/3%) as penalties, and the remaining one-third (33 1/3%) as interest. *Id.*, ¶ 55.

P.    Class List and Data: "Class List and Data" means a complete list of all Class Members that Defendant will diligently and in good faith compile from its records and provide the Settlement Administrator with fourteen (14) calendar days after Preliminary Approval of this Settlement. The Class List shall be formatted in Microsoft Office Excel and shall include each Class Member's full name, most recent mailing address, Social Security Number, dates of employment with Defendant, and the respective number of Workweeks that each Class Member worked for Defendant as a non-exempt employee in California during the Class Period. *Id.*, ¶ 4.

Q.    Release: Upon payment of all funds due and the occurrence of the Effective Date, Plaintiffs and all putative Class Members who did not opt out

13

will fully release all claims that were alleged or could have been alleged based on the facts and legal theories contained in the Action. *Id.*, ¶¶ 23, 60. Plaintiffs Florentino Lopez and Luis Hernandez agree to a general release from all known and unknown claims they have against the Released Parties. *Id.*, ¶¶ 36(b), 61.

R.    Notice Packet: "Notice Packet" means The Notice of Proposed Class Action Settlement and Final Fairness and Approval Hearing ("Notice" or "Class Notice"), substantially in the form attached as **Exhibit A**, and an enclosed self-addressed and postage-prepaid (Business Return Mail) envelope. *Id.*, ¶ 17. The Notice, with a Spanish translation, sets forth in plain terms, information regarding the nature of the Action, a summary of the Settlement's principal terms, the settlement class definition, each respective Putative Class Member's total number of Workweeks and estimated Individual Settlement Payment, dates of the Class Period, instructions on how to submit Requests for Exclusion, or objection, workweek dispute procedure, and final approval hearing date. *Id.*, ¶ 47. The Settlement Administrator shall mail a Notice Packet to all putative Class Members via regular First-Class U.S. Mail, using the most current, known mailing addresses identified in the Class List, within ten (10) calendar days after receiving the Class List and Data from Defendant. If a new address is obtained by a way of a returned Notice Packet, then the Settlement Administrator shall promptly forward the original Notice Packet to the updated address via First-Class U.S. Mail indicating on the original Notice Packet the date of such re-mailing. Where a Notice Packet is returned as undeliverable, without a forwarding address, the Settlement Administrator will perform a computer/SSN and "skip trace" search to obtain an updated address. *Id.*, ¶ 46(a)(b).

S.    Procedure for Disputing Workweeks: Putative Class Members may

14

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

dispute their number of Workweeks stated in their Notice by submitting a written dispute to the Settlement Administrator prior to the Response Deadline, along with supporting documentation. *Id.*, ¶ 48(a).

T.    <u>Request for Exclusion</u>: Putative Class Members wishing to opt out from the Settlement Agreement may do so by signing and submitting a written Request for Exclusion to the Settlement Administrator within the Response Deadline. *Id.*, ¶ 49.

U.    <u>Objection to Settlement</u>: Putative Class Members who do not opt out of the Settlement may object to the Settlement by filing a valid Notice of Objection with the Court and serving copies of the Notice of Objection to the Parties' Counsel before Response Deadline. *Id.*, ¶ 51.

V.    <u>Response Deadline</u>: The Response Deadline is thirty (30) calendar days from the initial mailing of the Notice Packet by the Settlement Administrator. The Response Deadline for Requests for Exclusion will be extended ten (10) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator. *Id.*, ¶ 27.

W.    <u>No Admission of Liability</u>: Defendant and the Released Parties deny any and all claims alleged in the Action and the Settlement shall not constitute an admission of any kind by Defendant. *Id.*, ¶¶ 33, 78.

## IV.    LEGAL DISCUSSION

### A.    <u>**Legal Standard**</u>

A certified class action or a class proposed to be certified for purposes of settlement may be settled only with the court's approval. *See,* Fed. R. Civ. P. 23(e). Court approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is

15

presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below, this class action Settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Accordingly, the Court should preliminarily approve the Settlement.

**B.** **The Court Should Grant Preliminary Approval of the Settlement Because the Settlement Class Meets the Requirement for Class Certification**

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of employees who have suffered wage and hour violations under California wage and hour laws. Likewise, Plaintiffs contend that the Settlement

16

1   Class meets all of these requirements.

2           **1. The Putative Class Members Are Numerous and Ascertainable.**

3         The numerosity prerequisite demands that a class be large enough that joinder

4   of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). Courts routinely

5   find numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v.*

6   *Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); R*omero v. Producers*

7   *Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). "[A] class will be found to

8   exist if the description of the class is definite enough so that it is administratively

9   feasible for the court to ascertain whether an individual is a member*." O'Connor v.*

10  *Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

11        The size of the Class here, which consists of approximately 876 Class

12  Members, renders the class so large as to make joinder impracticable. *See*, Moon

13  Decl., ¶ 32. Moreover, there is an easily ascertainable class, defined by objective and

14  precise criteria. The Class Members are readily identifiable using specific criteria in

15  the regular business records of Defendant, i.e., job position. As such, the Class is

16  ascertainable.

17          **2. Plaintiffs' Claims Raise Common Issues of Fact or Law.**

18        The commonality requirement of Rule 23(a)(2) "is met if there is at least one

19  common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467

20  (E.D. Pa. 2000). Plaintiffs "need not show that every question in the case, or even a

21  preponderance of questions, is capable of class-wide resolution." *Wang v. Chinese*

22  *Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common

23  question" can satisfy the commonality requirement of Rule 23(a)(2). *Id*. In the

24  context of wage and hour class actions, a facial challenge to an employer's policy or

25  practice "is a legal question plainly capable of class-wide resolution." *Fodera v.*

26  *Equinox Holdings, Inc.*, 341 F.R.D. 616, 629 (N.D. Cal. 2022).

27        Plaintiffs contend that common questions of law and fact predominate here.

28  The wage and hour violations at issue are borne of Defendant's standardized policies,

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA ACTION SETTLEMENT

practices, and procedures regarding off-the-clock work, meal and rest breaks, and reimbursements that Defendant imposes, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. *See*, Moon Decl., ¶ 6. The factual and legal issues are the same for all identified Class Members, including themselves, as Class Members were subject to the same: timekeeping, payroll, compensation, clock in and clock out process, and meal and rest period policies and practices. Further, all class members suffered from and seek redress for the same alleged injuries. Plaintiffs' other derivative claims will rise or fall with the primary claims. Considering that Class Members would need to prove the same issues of law and fact to prevail, and their legal remedies would be indistinguishable, it would be preferable to resolve all claims through a settlement agreement than to force each Class Member to litigate their own individual claims. Because these questions can be resolved at the same juncture and because common questions of law and fact predominate over any individual questions within the class, the commonality requirement is satisfied for the Class.

### 3. Plaintiffs' Claims Are Typical of the Claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "[A] representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs contend that their claims are typical of those of all other Class Members. Plaintiffs were former employees of Defendant and were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *See*, Moon Decl., ¶ 5. Interviews with Class Members and review of documents and data confirm that the employees throughout California were subjected to the same alleged illegal policies and practices to which Plaintiffs were subjected. Thus, Plaintiffs contend that the typicality requirement is also satisfied.

### 4. Plaintiffs and Their Counsel Can Adequately Represent the

1    **Class.**

2        To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs

3    must show "(1) that the putative named plaintiff has the ability and the incentive to

4    represent the claims of the class vigorously; (2) that he or she has obtained adequate

5    counsel, and (3) that there is no conflict between the individual's claims and those

6    asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.

7        Plaintiffs' claims are in line with the claims of the Class Members, and

8    Plaintiffs' claims are not antagonistic to the claims of Class Members. *See*,

9    Declaration of Florentino Lopez, ¶¶ 8-11. In addition, Plaintiffs have diligently

10   prosecuted this case and reviewed the settlement terms, with the interests of the Class

11   Members in mind. *Id*. Plaintiffs' willingness to serve as representatives demonstrates

12   their serious commitment to bringing about the best possible results for the Class.

13   Moreover, Plaintiffs retained Class Counsel who have extensive experience in class

14   action and employment litigation, including wage and hour class actions, and who do

15   not have any conflict with the Class. *See*, Moon Decl., ¶ 58; Marquez Decl., ¶¶ 34-

16   44 .

17       **5.  The Rule 23(b)(3) Requirements for Class Certification Are Met.**

18       Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions

19   "predominate over any questions affecting only individual members" and that a class

20   action is "superior to other available methods for fairly and efficiently adjudicating

21   the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the

22   relationship between the common and individual issues' in the case and 'tests

23   whether proposed classes are sufficiently cohesive to warrant adjudication by

24   representation.'" *Wang*, 737 F.3d at 545.

25       Here, Plaintiffs contend the common questions raised in this action

26   predominate over any individualized questions concerning the Class Members. The

27   Class is entirely cohesive because resolution of Plaintiffs' claims hinge on the

28   uniform policies and practices of Defendants, rather than the treatment the Class

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA ACTION SETTLEMENT

1    Members experienced on an individual level. Namely, the predominant questions

2    relate to whether Class Members are entitled to be compensated for the time spent

3    during preliminary activities, such as working before and/or after their scheduled

4    shifts without compensation, unreimbursed business expenses, and for the missed,

5    interrupted, or shortened meal and rest periods. As a result, Plaintiffs contend that

6    the resolution of these alleged class claims would be achieved through the use of

7    common forms of proof, such as Defendant's policies and time and pay records, and

8    would not require inquiries specific to individual Class Members.

9        Further, Plaintiffs contend that the class action mechanism is a superior

10   method of adjudication compared to a multitude of individual suits. To determine

11   whether the class approach is superior, courts are to consider: (A) the class members'

12   interests in individually controlling the prosecution or defense of separate actions;

13   (B) the extent and nature of any litigation concerning the controversy already begun

14   by or against class members; (C) the desirability or undesirability of concentrating

15   the litigation of the claims in the particular forum; and (D) the likely difficulties in

16   managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

17       Here, the Class Members do not have a strong interest in controlling their

18   individual claims. The action involves hundreds of workers with very similar, but

19   relatively small, claims for monetary injury.  If the Class Members proceeded on their

20   claims as individuals, their many individual suits would require duplicative discovery

21   and duplicative litigation, and each Class Member would have to personally

22   participate in the litigation effort to an extent that would never be required in a class

23   proceeding. Thus, Plaintiffs contend that the class action mechanism would

24   efficiently resolve numerous substantially identical claims while avoiding a waste of

25   judicial resources and eliminating the possibility of conflicting decisions from

26   repetitious litigation and arbitrations.

27       The Settlement presented by the Parties also provides finality, ensures that

28   workers receive redress for their relatively modest claims, and avoids clogging the

1  legal system with numerous cases. Accordingly, class treatment is efficient and

2  warranted, and the Court should conditionally certify the Class for settlement

3  purposes.

4      **C.      The Court Should Grant Preliminary Approval of the Settlement**

5          **Because the Settlement Is Fair, Reasonable, and Adequate**

6          In deciding whether to approve a proposed class settlement, the Court must

7  find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P.

8  23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

9  1982); *Lynn's Food Stores*, 679 F.2d at 1354-55; *Otey*, 2015 WL 6091741, at *4.

10  Included in this analysis are considerations of: the strength of the plaintiffs' case; the

11  risk, expense, complexity, and likely duration of further litigation; the risk of

12  maintaining class action status throughout the trial; the amount offered in settlement;

13  the extent of discovery completed and the stage of the proceedings; the experience

14  and views of counsel; the presence of a governmental participant; and the reaction of

15  the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*,

16  361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

17          Importantly, courts apply a presumption of fairness, whereas is the case here,

18  "the settlement is recommended by class counsel after arm's-length bargaining."

19  *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6

20  (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors

21  settlements, particularly where complex class action litigation is concerned." *In re*

22  *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors,

23  the proposed settlement is fair, reasonable, and adequate.

24          **1.  The Settlement Is the Product of Discovery, Investigation, and**

25              **Informed and Non-Collusive Arm's Length Negotiations.**

26          Courts routinely presume a settlement is fair where it is reached through arm's-

27  length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14.

28  Furthermore, where counsel are well-qualified to represent the proposed class in a

21

settlement based on their extensive class action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. *See*, Moon Decl., ¶ 13. The Settlement was reached following extensive negotiations after the Parties participated in a lengthy private mediation session before Lisa Klerman, Esq., a professional neutral mediator. *Id*. The settlement negotiations, although conducted at arm's length and in a professional manner, were adversarial. *Id*. The parties went into the mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate their or its position through trial and appeal if a settlement had not been reached. *Id*.

Prior to reaching this Settlement, Class Counsel conducted informal discovery and investigation into the claims alleged by Plaintiffs, including, among other things, reviewing and analyzing a sample of time and pay records for Class Members as well as the policy manuals in effect during the statutory period, and preparing a damage analysis. *See*, Moon Decl., ¶ 11. Significantly, Class Counsel's calculations are based on the analysis of a statistics expert retained by Class Counsel to analyze the records produced by Defendant. *See*, Moon Decl., ¶ 12. In conjunction with their extensive factual investigation, Class Counsel investigated the applicable law regarding the claims and defenses asserted in the litigation. *Id*. Thus, Plaintiffs and their counsel were able to act intelligently and effectively in negotiating the proposed settlement. *Id*.

The Parties then spent several weeks discussing settlement and negotiating the settlement agreement, with several rounds of edits relating to the terms of the Settlement. Moreover, Plaintiffs are represented by experienced class action litigators who feel strongly that the proposed Settlement achieves an excellent result for the

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

Class Members. Accordingly, Plaintiffs contend that a presumption of fairness applies here.

### 2. The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class-Action Status Throughout Trial.

Weighing the significant risks associated with further litigation against the strengths of Plaintiffs' case supports approval of the Settlement here. When a party continues to deny liability, there is an inherent risk in continuing litigation. Getting the case certified and litigating the class action claims, here, would require substantial additional preparation and resources. *See*, Moon Decl., ¶ 33; Marquez Decl., ¶ 16. In this case, Plaintiffs alleged that Defendant required Plaintiffs and Class Members to work off-the-clock by requiring employees to come to work before clocking in and/or to stay at work after clocking out without compensation. *See*, Moon Decl., ¶ 25. Defendant contended that working off the clock was contrary to its strict written policies, and thus employees were compensated for all time worked. *See*, Moon Decl., ¶¶ 25-26. Furthermore, Defendant asserted that Plaintiffs' claim for meal period and rest break violations would fail because many Class Members' meal breaks and rest breaks were properly taken, and where a violation appears, it was a result of some Class Members voluntarily choosing to forego a meal period or rest break. *See*, Moon Decl., ¶¶ 27-28. Lastly, Defendant asserted that Plaintiffs' claim for unreimbursed business expenses would fail because it maintained a reimbursement policy, and any use of personal cell phones would be extremely rare and unique such that the claim is not susceptible to class-wide treatment, and thus any business-related expenses would have been reimbursed. *See*, Moon Decl., ¶ 29.

While Plaintiffs are confident in their ability to successfully litigate the alleged claims on the merits, the risks of doing so are substantial. In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 U.S.Dist.LEXIS 44852, at *5 (N.D. Cal. April 21, 2011), the court approved a settlement agreement in which the defendant specifically

denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also, Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. April 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …). Here, Defendant similarly continues to contest liability and the propriety of class certification, injecting uncertainty and risk in continuing to litigate.

Thus, the Settlement obviates the significant risk that this Court may deny certification of all or some of Plaintiffs' claims. *See*, Moon Decl., ¶ 33; Marquez Decl., ¶¶ 18-22. While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists as to each cause of action. *Id*. Plaintiffs also recognize that proving the amount of wages due to each class member would be an expensive, time-consuming, and uncertain proposition. *Id*. Furthermore, continued litigation would be expensive, involving a trial and possible appeals, and would substantially delay and reduce any recovery by the class. *Id*.

Resolving this case by means of the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a result will benefit the Parties and the court. It will bring finality to years of arduous litigation and will foreclose the possibility of expanding litigation.

### 3. The Amount Offered in Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes […] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a […] speculative measure of what might have been achieved." *Linney v. Cellular Alaska P'ship*, 151

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).

In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See generally, City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$850,000.00—is not only fair and reasonable, but an exceptional result, especially in light of the realistic maximum recovery which Plaintiffs estimate to be $1,454,025.15. *See*, Moon Decl., ¶ 32; Marquez Decl., ¶ 18. As the Settlement amount represents 58.46% of the realistic maximum recovery, the Settlement amount represents a meaningful recovery for Class Members. *Id.*; *See e.g., Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx)) 2019 U.S.Dist.LEXIS 180474 (C.D.Cal. Oct. 10, 2019), at *21 (finding 10% recovery of the total maximum damages potentially available reasonable in light of the risks of continued litigation).

The proposed settlement of $850,000.00 therefore represents a substantial recovery when compared to Plaintiffs' reasonably forecasted recovery. *See*, Moon Decl., ¶ 33; Marquez Decl., ¶ 18. Because of the proposed Settlement, Class Members will receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment. *Id*. When considering the risks of litigation, including the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, it is clear that the settlement amount of $850,000.00 is within the "ballpark" of reasonableness, and preliminary settlement approval is appropriate. *Id*. Indeed, each Settlement Class Member is eligible to receive an average net benefit of approximately $568.40. *See*, Moon Decl., ¶ 32; Marquez Decl., ¶ 21. Considering that the Class Members' average

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

hourly rate is $32.50, the average net benefit is approximately 17.49 hours of work. *Id.*

### 4. The Extent of Discovery Completed and the Stage of the Proceedings

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the parties and the court have sufficient information before them to assess the merits of the claims. *See, e.g., Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive discovery that enabled both sides to assess the claims and potential defenses in this action. *See*, Moon Decl., ¶ 11; Marquez Decl., ¶¶ 7-8. This allowed the Parties to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *Id.* In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class actions. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on Class Members' pay. *Id.*, ¶ 12; Marquez Decl., ¶¶ 7-8. Further, Plaintiffs retained an expert to calculate the damages and penalties analysis for mediation using Defendant's records. *Id.* Ultimately, facilitated by mediator Lisa Klerman, Esq., the Parties used this information and discovery to fairly resolve the litigation. *Id.*, ¶¶ 13-14; Marquez Decl., ¶ 9.

### 5. The Experience and Views of Counsel.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F.Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties

26

represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, all Parties agreed that the Settlement was fair, adequate, and reasonable. Plaintiffs' Counsel and Defendant's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. *See*, Moon Decl., ¶¶ 47-56; Marquez Decl., ¶¶ 34-44. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's preliminary approval.

### 6. Class Members' Response to the Settlement.

At final approval, Plaintiffs will inform the Court of any exclusions or objections to the settlement.

### D. <u>The Service Awards to Representative Plaintiffs Are Reasonable</u>

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Here, the requested service payments of up to $5,000 for each Plaintiff are intended to compensate them for the critical role they played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class Members. *See*, Moon Decl., ¶ 34; Marquez Decl., ¶¶ 23-27. In agreeing to serve as Class representatives, these individuals formally agreed to accept the responsibilities of representing the interests of all Class Members. *Id.* Class Counsel represents that Plaintiffs devoted a great deal of time and work assisting counsel in the case and communicated with counsel very frequently for litigation and to prepare for mediation. *Id.* Thus, this amount is reasonable particularly in light of the substantial benefits Plaintiffs generated for all Class Members. *See*, Moon Decl., ¶¶ 36-37; Marquez Decl., ¶ 23. Defendant does not oppose the requested payments to these representatives as reasonable service awards and in consideration of the full releases

given by Plaintiffs. *Id.*

Moreover, the enhancement payments are fair when compared to the payments approved in similar cases. *See, e.g., Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving $15,000 and $10,000 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v. Sprint/United Management Co., Inc.*, No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service payments for each class representative in FLSA and California state law representative wage and hour action); *Van Liew v. North Star Emergency Services, Inc., et al.*, No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11, 2018) (approving $15,000 and $10,000 service awards, respectively, to class representatives in California Labor Code wage and hour class action).

### E.     The Requested Attorneys' Fees and Costs Are Reasonable

Under the Settlement, subject to the Court's approval, Defendant agrees not to oppose Class Counsel's request for a percentage of the Gross Settlement Amount, up to 33 1/3% of the Gross Settlement Amount, or $283,333.33, plus reimbursement of costs up to $25,000.00. *See*, Moon Decl., ¶ 38. These requested amounts for attorneys' fees and costs are disclosed to all Class Members in the proposed Notice and are reasonable. Currently, the lodestar of all Plaintiffs' counsel is $141,965.00, which accounts for a current multiplier of 2. *See*, Moon Decl., ¶ 42. At final approval, Class Counsel will provide detailed lodestar information to show the requested fee is reasonable under both the percentage method and a lodestar "cross-check."

### 1. Class Counsel Will Request an Award of Fees Based on the "Common Fund" Method.

When a district court exercises diversity jurisdiction over a case consisting of exclusively California claims, as here, California substantive law applies to the calculation of the attorney fee award. *See, Mangold v. Cal. Pub. Utils. Comm'n*, 67

28

F.3d 1470, 1478-1479 (9th Cir. 1995) (finding state law to be applicable in "in determining not only the right to fees, but also the method of calculating the fees."); *see also, Rodriguez v. Disner*, 688 F.3d 645, 653 fn. 6 (9th Cir. 2012) ("If … we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees"); *Gonzalez v. Southern Wine & Spirits of Am., Inc.*, 555 Fed.Appx. 704, 704-705 (9th Cir. 2014) (finding district court abused its discretion in applying federal law instead of California substantive law to the calculation of attorneys' fees, holding that, because the court exercised diversity jurisdiction, California substantive law should have been applied).

Here, Plaintiffs' claims arise exclusively from California law. Accordingly, the Court should apply the method for calculating attorney's fees as set forth by California jurisprudence. *See, e.g., Laffitte v. Robert Half International, Inc.*, 1 Cal.5th 480, 503-506 (2016) (percentage method with a lodestar crosscheck is appropriate in common fund cases). The California Supreme Court in *Laffitte* held that "the percentage method is a valuable tool that should not be denied" by the courts as there are "recognized advantages" such as "relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Id.* at 503.

Furthermore, the use of the percentage method in common fund cases appears to be dominant in the Ninth Circuit. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The advantages of using the percentage method have been described thoroughly by other courts. *See, e.g., In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method).

### 2. The Requested Fee Award Is in Line with Typical Cases.

According to a leading treatise on class actions, "No general rule can be

29

articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *See*, Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03. Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with thirty to forty percent commonly awarded in cases where the settlement is relatively small. *See, id.*; *see also, Van Vranken v. Atlantic Richfield Company*, 901 F.Supp. 294 (N.D. Cal. 1995) (stating that most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10 million.).

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing P*owers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")).

In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions. *See, e.g., Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren*, 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

Here, Class Counsel request attorneys' fees that equal to one-third of the Gross Settlement Amount, which is in line with the prevailing guidelines established in California case law and academic literature and is consistent with awards in California. *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) ("Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Moreover, this percentage of the requested attorneys' fees is also within the typical range of attorneys' fees awarded in the Ninth Circuit.

### 3. The Experience, Reputation, and Ability of Class Counsel, and the Risk Undertaken by Class Counsel Support the Requested Fee Award.

As demonstrated by their past experience in pursuing class actions on behalf of consumers and employees, Class Counsel possess considerable expertise in litigating class actions. *See*, Moon Decl., ¶¶ 47-56; Marquez Decl., ¶¶ 34-44. Class Counsel has been involved as lead counsel or co-counsel in several class actions that resulted in millions in recovery. *Id*. Because it is reasonable to compensate class counsel commensurate with their skill, reputation and experience, Class Counsel's requested fee award is supported here.

Class Counsel's experience in wage and hour class actions was integral in evaluating the strengths and weaknesses of the case against Defendant and the reasonableness of the settlement. Practice in the narrow field of wage and hour litigation requires skill and knowledge concerning the rapidly evolving substantive law (state and federal), as well as the procedural law of class action litigation. Based on these and other factors, Class Counsel has frequently received fee awards of this percentage from the gross recovery for the class.

Furthermore, there was no guarantee of compensation or reimbursement. *See*, Moon Decl., ¶¶ 44-45; Marquez Decl., ¶¶ 31-33. Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id*. These risks were front

31

and center. Defendant's vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id*.

Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and pressing Plaintiffs' legal claims to enforce the employees' rights and maximize the class recovery. *Id*. During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one. *Id*. The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class here are precisely the reasons for multipliers in contingency fee cases. *See, e.g., Noyes v. Kelly Servs., Inc.*, 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain. This does not result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (i.e., if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

Accordingly, Plaintiffs respectfully request that the Court preliminarily

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

approve the attorneys' fees and costs as negotiated by the Parties and requested herein.

### F. The Proposed Notice of Settlement and Claims Process Are Reasonable

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

The Notice of Settlement, attached as **Exhibit A** to the Settlement Agreement, is "the best notice practicable." Fed.R.Civ.P. 23(c)(2)(B). All Class Members have been identified and the Notice of Settlement will be mailed directly to each Class Member. *See*, Settlement Agreement, Ex. A, "Notice of Class Action and PAGA Settlement and Release." As the Notice will be provided by direct mail, the best possible form of notice under the circumstances, the proposed Notice plan satisfies due process. Furthermore, the proposed Notice is clear and straightforward, and provides information on the nature of the action and the proposed, the terms and provisions of the Settlement Agreement, and the monetary awards that the Settlement will provide Class Members. *Id*. It makes clear that the Settlement Agreement does not constitute an admission of liability by Defendant, who denies all liability, and it recognizes that this Court has not ruled on the merits of the action. *Id*. It also states that the final settlement approval decision has yet to be made. *Id*.

1    The Notice of Settlement clearly explains the procedures and deadlines for
2 requesting exclusion from the Settlement and objecting to the Settlement, as well as
3 the consequences of taking or foregoing the various options available to Class
4 Members, and the date, time and place of the Final Approval Hearing. *Id*. Pursuant
5 to Rule 23(h), the proposed Notice of Settlement also sets forth the amount of
6 attorneys' fees and costs sought by Plaintiffs. Accordingly, the Notice of Settlement
7 complies with the standards of fairness, completeness, and neutrality required of a
8 settlement class notice disseminated under authority of the Court. *See* Conte,
9 Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex
10 Litigation, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th ed. 2004).
11    Because the proposed Notice of Settlement clearly and concisely describes the
12 terms of the Settlement and the awards and obligations for Class Members who
13 participate, and because the Notice will be disseminated in a way calculated to
14 provide notice to as many Class Members as possible, the Notice of Settlement
15 should be preliminarily approved.

16    **G.    The Court Should Approve the Proposed Schedule**

17    The last step in the settlement approval process is to hold a Final Approval
18 Hearing at which the court will hear argument and make a final decision about
19 whether to approve the Settlement pursuant to Rule 23(e)(3).  *See*, Manual for
20 Complex Litigation, supra, at §21.63.  Plaintiffs have submitted a proposed order
21 setting forth the proposed schedule of events from here through final approval. *See*,
22 [Proposed] Order. Plaintiffs submit that the proposed schedule complies with Rule
23 23 and secures the benefits for Class Members in a timely fashion.

24 **V.    CONCLUSION**

25    For the foregoing reasons, Plaintiffs respectfully request that the Court grant
26 preliminary approval of the proposed Settlement and set a Final Approval Hearing.

27

28                                    Respectfully submitted,

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA ACTION SETTLEMENT

1

2    Dated: January 10, 2024                    **MOON LAW GROUP, PC**

3

4                                              By:  */s/ Allen Feghali*
                                                   Kane Moon
5                                                  Allen Feghali
                                                   Christopher Garcia
6                                                  Attorneys for Plaintiff Florentino Lopez

7

8                                              Respectfully submitted,

9

10   Dated: January 10, 2024                    **WILSHIRE LAW FIRM, PLC**

11

12                                             By: */s/ Justin Marquez*
                                                   Justin F. Marquez
13                                                 Benjamin H. Haber
                                                   Daniel J. Kramer
14                                                 Attorneys for Plaintiff Luis Hernandez

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA ACTION SETTLEMENT